UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| **MARK D. MCINTYRE,** : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | **COMPLAINT** |
| : | **FOR DECLARATORY JUDGMENT** |
| **THOMAS C. KELLER,** : | |
| : | |
| Defendant : | |

---

Plaintiff Mark D. McIntyre ("McIntyre"), by his attorneys, Murphy & McGonigle, P.C., submits the following Complaint for Declaratory Judgment against Thomas C. Keller ("Keller").

## NATURE OF THE ACTION

1. This action arises from Keller's unwillingness to accept McIntyre's combined offer to either purchase Keller's membership interest in Keller McIntyre & Associates, LLC ("Keller McIntyre" or the "Firm"), the business they co-founded on October 31, 2012, or sell his membership interest in Keller McIntyre to Keller at the same price and on the same terms, as required by Section 8 of the Operating Agreement of Keller McIntyre ("Agreement"). The Operating Agreement is attached as Exhibit 1 and incorporated herein by reference.

2. Keller McIntyre is a District of Columbia limited liability company that primarily provides federal grant assistance to nonprofit institutions and organizations. Since Keller McIntyre's formation in 2012, McIntyre and Keller have each owned a 50% membership interest in the Firm.

1

3. Based on his observation of Keller's effort and overall contribution to Keller McIntyre, McIntyre concluded that the Firm would not achieve a suitable level of success if Keller continued his association with the Firm. Among other things, Keller's skill set had become obsolete and it was very apparent that Keller had "retired in place." On September 12, 2016, McIntyre informed Keller of his desire for a mutual and voluntary separation from the Firm. On October 5, 2016, McIntyre and Keller informed the Firm's staff of their separation, and on October 8, 2016, McIntyre presented Keller with two options for separation. On October 14, 2016, Keller did not agree to either option but communicated his desire for a mutually-agreeable separation.

4. On October 17, 2016, McIntyre presented Keller with another proposal for a mutual separation from the Firm, invoked Section 8.1 of the Agreement, which applies when the parties are "unable to reach agreement on an item of material significance to the continuation of the business of the [Firm]." McIntyre informed Keller at that time that Keller's decision not to agree to the terms and conditions that McIntyre proposed for a voluntary separation of one or the other from the Firm constituted an item of material significance to the continuation of the business of the Firm upon which Keller and McIntyre could not reach agreement. McIntyre informed Keller that because there was a disagreement between McIntyre and Keller about an item of material significance pursuant to the Agreement, they were required to agree on a mediator within ten days or either party would be permitted to deliver a written combined offer to either purchase the other's membership interest in the Firm, or sell his membership interest in the Firm to the other, at the same price and on the same terms, in accordance with Section 8 of the Agreement ("a Buy/Sell Offer"). Keller communicated through counsel that he did not agree

that Section 8 applied; however, he agreed to mediation.  The parties participated in a mediation from December 14 through December 15, 2016, but did not reach an agreement.

5. On December 26, 2016, in accordance with Section 8 of the Agreement, McIntyre delivered to Keller's counsel a Buy/Sell Offer.  In a letter dated January 9, 2017, Keller's counsel failed to accept or reject McIntyre's Buy/Sell Offer, calling it a "non-proposal."

6. Plaintiff seeks a declaratory judgment that: (1) the Agreement is binding upon the parties; (2) Section 8.1 of the Agreement determines the process for resolving the disagreement between the parties outlined in this Complaint; (3) McIntyre's Buy/Sell Offer delivered to Keller on December 26, 2016, satisfies the requirements of Section 8 of the Agreement; (4) McIntyre's Buy/Sell Offer to Keller on December 26, 2016 is enforceable under the terms of the Agreement; and (5) Pursuant to Section 14.16 of the Agreement, Keller is to pay all costs and expenses incurred by McIntyre in connection with this action, including without limitation all reasonable attorneys' fees and costs of collection.

### THE PARTIES

7. Plaintiff Mark D. McIntyre is a resident of the State of Maryland.  Since October 31, 2012, he has been a 50% owner of Keller McIntyre & Associates, LLC, a firm he co-founded with the Defendant Thomas C. Keller.

8. Defendant Thomas C. Keller is a resident of the State of Connecticut. Since October 31, 2012, he has been a 50% owner of Keller McIntyre & Associates, a firm he co-founded with the Plaintiff, Mark D. McIntyre.

### JURISDICTION AND VENUE

9. This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq.,* for the purpose of determining a question of actual controversy between the parties.

10. The Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332. Furthermore, Section 14.10 of the Agreement provides that the parties consent to this Court's exercise of personal jurisdiction over them in any dispute or matter arising under the Agreement. (Exhibit 1 at 19).

11. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

13. Prior to the formation of Keller McIntyre, McIntyre and Keller were colleagues at Russ Reid, a communications and government relations firm.

14. McIntyre and Keller formed Keller McIntyre & Associates, LLC, on October 31, 2012, and left their positions at Russ Reid to begin work at Keller McIntyre in December 2012. (Exhibit 1 at 1).

15. Since the inception of Keller McIntyre, Keller and McIntyre have each held 50% interests in the firm. (Exhibit A to Exhibit 1).

16. Keller McIntyre provides federal grant assistance to nonprofit institutions and organizations such as hospitals, universities, municipalities, international non-governmental organizations, and social service agencies.

17. The parties understood that at Keller McIntyre, like at Russ Reid, McIntyre would be primarily responsible for obtaining new clients, while Keller would be primarily responsible for managing existing client relationships.

18. Currently, Keller McIntyre has four fill-time employees and five commission-based salespersons.

19. Keller McIntyre's revenues are dependent upon maintaining existing clients and signing new clients.

20. In 2016, McIntyre brought in 21 new clients, however, the firm is losing existing clients as quickly as it acquires new ones due to Keller's inconsistent service to the existing client base.

21. McIntyre determined that Keller's contributions to the Firm consistently failed to match his own, and decided to separate from the Firm.

22. On September 12, 2016, McIntyre informed Keller of his desire for a mutual, voluntary separation from the Firm.

23. On October 5, 2016, McIntyre and Keller informed the Firm's staff of their plan to separate.

24. On October 8, 2016, McIntyre proposed two potential separation options via e-mail to Keller for his consideration: (a) a fair and equitable division of clients and the dissolution of the Firm; or (b) the continuation of the Firm with an additional named partner with Keller serving as a consultant.

25. Keller communicated to McIntyre via e-mail that he did not accept either proposal, and that he had not "officially agreed to separate or dissolve [the Firm]."

26. Section 8.1 of the Agreement provides as follows:

> 8.1. In the event that the Members are unable to reach agreement on an item of material significance to the continuation of the business of the Company, they shall first submit the matter to mediation by a mediator mutually acceptable to them. If they are unable to resolve the dispute within ten (10) days of either party submitting the issue to mediation, or if they are unable to agree on a mediator within such ten (10) day period, then either Member ("Offering Member") may make a combined offer to either purchase the other Member's ("Offeree Member") Membership Interest, or to sell the Offering Member's Membership Interest to the Offeree Member at the same price and on the same terms. The Offering Member shall give

written notice to the Offeree Member setting forth the price and terms of the combined offer. The Offeree Member shall have a period of thirty (30) days after receipt of the offer to accept either the offer to sell or the offer to purchase. If the Offeree Member fails to accept either offer within the thirty (30) day period, he shall be deemed to have agreed to sell his Membership Interest for the price and upon the terms set forth in the combined offer.

(Exhibit 1 at 6).

27. Section 8.2 of the Agreement provides as follows:

8.2. Any combined offer under this Section must contain the following:

8.2.1. A statement that a consideration to any purchase shall be the indemnity by the purchaser of the seller against any loss, claim, damage or expense, including attorneys' fees, that the seller may suffer or incur arising out of any guarantee of the seller of any debt of the Company for borrowed money; and

8.2.2. A closing date of no more than sixty (60) days following the acceptance or deemed acceptance of any offer.

(Exhibit 1 at 6-7).

28. On October 17, 2016, McIntyre invoked Section 8.1 of the Agreement and presented Keller with another proposal: (a) divide the Firm's clients into two groups for each to solicit without objection from each other; (b) permit Keller and McIntyre to each solicit all employees and associates without objection from each other; and (c) divide equally any Company assets remaining after satisfying all current and future known debts and obligations.

29. The aggregate estimated annual revenue of the clients that McIntyre proposed to be allocated to Keller in his October 17, 2016 letter, after deducting sales commissions, totals $1,517,600, while the value of the clients that were proposed to be allocated to McIntyre totals $1,403,700.

30. Because there was a disagreement about an item of material significance to the continuation of the business of the Company – the terms of the separation – McIntyre informed

Keller in his October 17, 2016 letter that, pursuant to the Section 8 of the Agreement, they were required to agree on a mediator within 10 days or McIntyre would be permitted to deliver a Buy/Sell Offer in accordance with Section 8 of the Agreement. (Exhibit 1 at 6).

31. On October 23, 2016, Keller replied via e-mail to McIntyre, indicating that he believed there was no disagreement because he was ready to determine the details of the dissolution, and therefore, he believed that Section 8 did not apply.

32. On October 25, 2016, McIntyre replied via e-mail to Keller, stating that Section 8 does apply because there is a disagreement as to the terms of the separation, an "item of material significance to the continuation of the business," and that the disagreement has been clear since at least October 17, 2016. McIntyre stated that, in accordance with Section 8, the parties had 10 days to come to an agreement, agree on a meditator, or either party could present a Buy/Sell Offer.

33. On October 27, 2016, Keller replied to McIntyre through his counsel, Todd Reinecker. Keller stated his view that Section 6.6 of the Agreement prohibits a member from voluntarily withdrawing, and that Section 8 of the Agreement does not apply. However, Keller agreed to mediation.

34. Keller refused to share in mediation costs, because he maintained that the Section 8 procedure does not apply, and therefore mediation is not required, and because he did not request mediation.

35. On November 18, 2016, the parties attended a pre-mediation meeting, but did not reach an agreement prior to mediation.

36. The parties participated in a mediation from December 14, 2016 to December 15, 2016, but did not reach an agreement.

37.     On December 26, 2016, because the parties did not reach an agreement at mediation, McIntyre delivered to Keller's counsel a written combined offer to either purchase Keller's membership interest in the Firm or sell his membership interest in the Firm at the same price and same terms to Keller, pursuant to the procedure outlined in Section 8.1 of the Agreement.  The terms were as follows: McIntyre offered to pay Keller $1.00 in the form of a check written out to Thomas Keller personally for Keller's Membership Interest in Keller McIntyre.  McIntyre and Keller would both be permitted to solicit the firm's clients without objection from the other party, and both McIntyre and Keller would be permitted to solicit Firm employees and associates to join their separate enterprises, without objection from the other party.  McIntyre would acquire all of the Firm's assets and liabilities, and would pay off the Firm's then-existing and future obligations. In the event there was any capital remaining after payment of all of the Firm's then-existing and future obligations, McIntyre would pay Keller 50% of any remaining capital.  In the event that no capital remained after payment of the Firm's then-existing obligations, any outstanding obligations would remain with the Firm. The same offer was extended to Keller, to purchase McIntyre's membership interest in the Firm, at the same price and on the same terms.  The offers complied with Sections 8.2.1 and 8.2.2 of the Agreement.

38.     On January 9, 2017, Keller's counsel responded to McIntyre's combined offer in a letter that criticized McIntyre and disparaged his offer as a "non-proposal."  Keller failed to accept McIntyre's offer.

39.     Keller has consistently maintained that McIntyre is not permitted under the Agreement to voluntarily separate and that Section 8 of the Agreement does not apply.  Keller

has refused to accept multiple offers made by McIntyre to amicably separate from the Firm, instead threatening to sue McIntyre for damages.

40. Keller refuses to allow McIntyre to separate from the Firm, while insisting that there is no disagreement, and, therefore, the procedure in Section 8 of the Agreement specifically designed to prevent just this type of stalemate does not apply.

41. If Section 8 does not apply, Keller would be able to withhold his consent arbitrarily and indefinitely, potentially preventing McIntyre from ever separating from the Firm. Avoiding this absurd result is the reason Section 8 was incorporated into the Agreement.

42. Keller's actions are impermissible under the Agreement, and the Section 8 procedure in the Agreement should be followed.

43. Pursuant to Section 14.10 of the Agreement, the "Agreement shall be interpreted, construed, and governed exclusively according to the internal laws of the District of Columbia, without reference to its Choice of law rules, as if made by and between residents of the District of Columbia, and as if to be wholly performed within the District of Columbia." (Exhibit 1 at 19).

44. Pursuant to Section 14.16 of the Agreement, "[i]f any party to the Agreement seeks to enforce its rights under this Agreement by legal proceedings, the non-prevailing party should pay all costs and expenses incurred by the prevailing party, including without limitation all reasonable attorneys' fees and costs of collection."

## COUNT I
## DECLARATORY JUDGMENT

**Keller's Failure to Accept McIntyre's Offers Deems Keller to Have Agreed to Sell his Membership Interest in Keller McIntyre**

45. Plaintiff adopts and incorporates each of the foregoing allegations of this Complaint as if hereinafter set forth in full.

46. McIntyre wishes to separate from Keller McIntyre.

47. Keller has not agreed to allow McIntyre to separate from Keller McIntyre.

48. McIntyre's separation from the Firm is a matter of material significance to the continuation of the business.

49. McIntyre and Keller have attempted, but are unable, to reach agreement on McIntyre's separation.

50. Section 8 of the Agreement governs situations in which the parties are "unable to reach agreement on an item of material significance to the continuation of the business of the [Firm]."

51. These circumstances constitute a disagreement between McIntyre and Keller about an item of material significance to the continuation of the business of the Firm.

52. In such situations, Section 8 provides that a party may make a combined offer to either purchase the other party's membership interest in the Firm or sell their membership interest in the Firm at the same price and on the same terms to the other party.

53. An offer meeting the requirements of Section 8 was made by McIntyre to Keller on December 26, 2016.

54. The December 26, 2016 offer is valid and enforceable pursuant to the Agreement.

55. This issue requires a legal determination by the court.

56. Plaintiff has a direct and vital interest in having this issue resolved.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue a Declaratory Judgment as follows:

1. The Agreement is binding upon the parties.

2. Section 8.1 of the Agreement determines the process for resolving the disagreement between the parties outlined in this Complaint.

3. McIntyre's Buy/Sell Offer delivered to Keller on December 26, 2016, satisfies the requirements of Section 8 of the Agreement.

4. McIntyre's Buy/Sell Offer to Keller on December 26, 2016 is enforceable under the terms of the Agreement.

5. Pursuant to Section 14.16 of the Agreement, Keller is to pay all costs and expenses incurred by McIntyre in connection with this action, including without limitation all reasonable attorneys' fees and costs of collection.

Dated: January 26, 2017  
Washington, D.C.

MURPHY & MCGONIGLE, P.C.

By: _____  
Thomas J. McGonigle  
Timothy P. Peterson  
Brian M. Walsh  
555 13th Street, N.W.  
Suite 410 West  
Washington, D.C. 20004  
(202) 661-7010

*Counsel for Plaintiff Mark D. McIntyre*